UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 0:26-cv-61429-EA/Augustin-Birch

SAVANNAH WILKES,
Plaintiff,
v.
NOVA SOUTHEASTERN UNIVERSITY, INC.,
Defendant.
_______________________________________/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT [D.E. 9]**

Plaintiff, Savannah Wilkes, responds in opposition to Defendant Nova Southeastern University, Inc.'s, Motion to Dismiss Plaintiff's First Amended Complaint [D.E. 9] (the *"Motion to Dismiss" or "MTD"*), and states:

**TABLE OF CONTENTS**


INTRODUCTION 2
LEGAL STANDARD 3
ARGUMENT 4
I. The Amended Complaint Is Not a Shotgun Pleading. 7
II. Count I Is Unchallenged on the Merits and Is Well Pleaded. 8
III. Count III Adequately Alleges Standing for Prospective Relief. 8
IV. Counts II and IV Plead Causation and Are Not Duplicative. 10
V. Count V States a Claim for Breach of Contract. 11
VI. Count VI Is Pleaded as Part of Count V and Should Not Be Dismissed with Prejudice. 13
VII. Count VII Pleads Detrimental Reliance. 14
VIII. Count VIII Satisfies Rule 9(b). 15
IX. Count IX Is Pleaded in the Alternative and Cannot Be Dismissed with Prejudice. 16
X. Counts X and XI Are Not Barred and Should Not Be Dismissed with Prejudice. 17
XI. Count XII States a FDUTPA Claim. 18
XII. Count XIII Seeks Distinct Relief and Is Not Redundant. 20
XIII. The Pending Stay Motion Provides No Basis to Dismiss. 21
CONCLUSION 20
REQUEST FOR HEARING 21

## INTRODUCTION

Defendant's Motion to Dismiss opens by characterizing the Amended Complaint as the "latest iteration" of a "familiar" "cycle" of pleadings, one NSU says is also unfolding in a separate lawsuit brought by a different student. Only, there is no "cycle" here or even there. This is Plaintiff's first amended complaint in this case, filed as a matter of course under Rule 15(a)(1)(B), and the amendment was occasioned by NSU's own removal of a complaint drafted to Florida's pleading standard. After removing the case, NSU moved to dismiss it under the federal plausibility standard of *Twombly* and *Iqbal*—a standard the state-court complaint was never drafted to address. Conforming a removed pleading to the federal standard is not a "cycle"; it is the ordinary course, for which the Rules expressly provide. Fed. R. Civ. P. 15(a)(1)(B), 81(c)(1); *see Foman v. Davis*, 371 U.S. 178, 182 (1962). That NSU leads with a different student's case only underscores that its arguments do not rest on the pleading actually before the Court, whose sufficiency is judged on its own four corners.

NSU's own records defeat the dismissal at the heart of this case. NSU's Canvas gradebook recorded a course total of 836 of 1,000 points—83.6%—for OCT 6106, above the 78% that NSU's published policy fixes as the minimum passing grade. Am. Compl. ¶¶ 2, 17–18, 58. NSU nonetheless recorded an "F" for that course on Ms. Wilkes's official transcript and dismissed her under a policy that permits dismissal only "after two course failures." Am. Compl. ¶¶ 19, 70–71. That "F" is the only one on her NSU transcript; even assuming it was valid, it is one failure, not the two the rule requires—and NSU's own internal communications treated the recorded "F" as a course failure even as its gradebook reflected a passing total. Am. Compl. ¶ 62.

Nor was the failure one of arithmetic alone. NSU approved Ms. Wilkes's disability accommodations—extended time and a reduced-distraction testing environment—and then did

not provide them on the June 28, 2022 midterm in the very course at issue. Am. Compl. ¶¶ 38, 41, 44–45, 88–89. This case is therefore about whether NSU followed its own published policies and honored its equal-access obligations—not about the substance of any grade or any matter of academic judgment. The records that answer that question are NSU's own, particularly because NSU locked Ms. Wilkes out of her NSU email account shortly after "dismissing" her.

The Motion to Dismiss does not meet the pleading on the terms set out below. It does not as it did in its previous motion to dismiss seek to challenge Count I anymore—the core Section 504 disability-discrimination and failure-to-accommodate claim—at all. As to the remaining counts, it recasts contested questions of fact and contract construction as pleading defects: whether the gradebook total or the recorded "F" is the operative grade, which progression provision NSU applied, and why NSU treated a total above its own threshold as a failure. Those are merits questions for another day, and to the extent the Motion to Dismiss demands factual detail Rule 8 does not require, it fails as a matter of law. Indeed, NSU plainly understands the pleading: its detailed, sixteen-page, count-by-count Motion to Dismiss confirms as much. NSU closes by asking the Court to "dismiss those [claims] that [Plaintiff's] own allegations defeat." But the only allegations that defeat anything here are NSU's own—its gradebook, its transcript, and its policy—and they defeat the dismissal, not the pleading. What NSU actually asks is that the Court resolve, on the pleadings and in NSU's favor, the contradictions its own records create—while a companion motion asks the Court to stay discovery before those records are ever produced. Neither request is proper. The Motion should be denied; and to the extent the Court finds any count wanting, the remedy is leave to amend, not dismissal with prejudice.

## LEGAL STANDARD

A Rule 12(b)(6) motion tests the sufficiency of the pleading, not the merits of the dispute. The Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A complaint survives if it pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court disregards only legal conclusions; it then assumes the veracity of the remaining well-pleaded facts and asks whether they plausibly give rise to an entitlement to relief. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018).

Rule 8(a)(2) requires only "a short and plain statement of the claim"; it sets a ceiling on what a plaintiff must allege, not a floor of evidentiary detail, and does not permit courts to impose heightened fact-pleading by judicial gloss. *Berk v. Choy*, 607 U.S. 187, 192–93 (2026); *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) ("Specific facts are not necessary."); *Johnson v. City of Shelby*, 574 U.S. 10, 11–12 (2014) (federal rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory"); Florida's "ultimate facts" pleading standard does not apply in federal court. On a facial challenge to standing, the Court likewise accepts the complaint's well-pleaded allegations of injury, causation, and redressability as true. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328–29 (11th Cir. 2013).

## ARGUMENT

### I. The Amended Complaint Is Not a Shotgun Pleading.

A complaint is an impermissible shotgun pleading only if it fails to give the defendant "adequate notice of the claims against [it] and the grounds upon which each claim rests."

*Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). The Eleventh Circuit's four categories share that "unifying characteristic." *Id.* NSU's prior motion attacked the "paradigm" offense—a complaint in which "each count adopts the allegations of all preceding counts"—and its present Motion to Dismiss invokes the second category, a pleading "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1321–22. The Amended Complaint fits neither. Count II does not incorporate Count I; Count XIII does not drag in Counts I through XII. Each count incorporates a discrete, enumerated block of general allegations and then pleads its own elements, so it is never "virtually impossible" to know which allegations support which count. Am. Compl. ¶¶ 84, 95, 102, 111, 117, 126, 133, 141, 149, 157, 164, 170, 177. That is the ordinary, approved practice: in *Weiland* itself the court reversed the dismissal of counts that re-alleged preceding paragraphs because the defendants could still discern each claim and its basis. 792 F.3d at 1324–26. Adequate notice—"not a model of efficiency or specificity"—is all Rule 8 requires, even where a heightened standard applies. *Okposio v. Barry Univ., Inc.*, No. 22-13845, 2023 WL 7484223, at *3 (11th Cir. Nov. 13, 2023).

NSU's own litigation conduct refutes its lack-of-notice premise. This is the second time NSU has dissected this case count by count. Its first motion—directed at the original state-court complaint—devoted twenty-one pages to a ground-by-ground critique of all twelve causes of action, identifying the precise paragraphs it contended were deficient. [D.E. 3]. The Amended Complaint then did exactly what that motion demanded: it trimmed the pleading and replaced the wholesale incorporation of 160 general paragraphs into every count with discrete, enumerated blocks tailored to each claim. NSU's present sixteen-page Motion to Dismiss repeats the exercise, parsing each count, each element, and each allegation it says is missing. A defendant

that can twice brief a complaint in that detail has, by definition, received "adequate notice of the claims against [it] and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323. The doctrine condemns only pleadings that make it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief," *id.* at 1325 (quoting *Anderson*, 77 F.3d at 366)—an impossibility that cannot exist where NSU has shown, in two detailed motions, that it knows precisely what each count alleges. *Barmapov v. Amuial*, 986 F.3d 1321 (11th Cir. 2021), and *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364 (11th Cir. 1996), are therefore inapposite: each involved a pleading the defendant and court genuinely could not parse, not a complaint dissected ground-by-ground. And NSU's own uncited assertion—that an ability to "parse a sprawling pleading well enough to frame a response does not cure the defect"—has been rejected in this very District. *See Newmark v. Newmark*, No. 1:25-cv-24033 (S.D. Fla.) ("Their precise attacks on Defendants' claims undercut any possible lack-of-adequate-notice concern.").

NSU's two specific objections do not change the analysis. The exit-counseling allegation (Am. Compl. ¶ 82) is material to causation, separation, and damages; that a single allegation bears on more than one issue does not obscure any claim. NSU's only other target is a single mis-numbered cross-reference: Count XII incorporates "paragraphs 5 through 24, 70–71, 83, and 179," Am. Compl. ¶ 170, but paragraph 179 appears within Count XIII. That lone slip does not render the pleading unintelligible; that NSU pinpointed it confirms the opposite. Plaintiff is in any event willing to strike the reference to paragraph 179, a defect curable in a single sentence and no basis for requiring a repleading which would only increase the judicial toll and likely result in additional motion practice by Defendant.

The remedy for any genuine ambiguity confirms the point. A pleading a defendant cannot parse is addressed by a motion for a more definite statement under Rule 12(e) or an order to replead—not dismissal under Rule 12(b)(6). *Caterpillar Fin. Servs. Corp. v. Venequip Mach. Sales Corp.*, 147 F.4th 1341, 1347 (11th Cir. 2025); *McCullough*, 907 F.3d at 1333; *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295–96 (11th Cir. 2018). NSU's own lead authority makes the point: in *Anderson*, the Eleventh Circuit explained that a defendant faced with an unwieldy pleading is expected to move under Rule 12(e), and faulted the defendant there for electing, "as a matter of strategy," not to seek one. 77 F.3d at 366 & n.5. NSU has likewise chosen to move to dismiss rather than request a more definite statement. Courts in this District hold that even a pleading bearing "the hallmarks of a shotgun pleading" is ordinarily cured by repleader, not dismissed, and that dismissal with prejudice is an "extreme sanction" reserved for "willful contempt" and a failure to amend. *James River Ins. Co. v. O'Gallagher LLC*, 340 F.R.D. 471, 477–78 (S.D. Fla. 2022). *The Amended Complaint is not a shotgun pleading, and no repleading is required.*

**II. Count I Is Unchallenged on the Merits and Is Well Pleaded.**

The Motion to Dismiss does not attack Count I—Ms. Wilkes's central claim for disability discrimination and failure to accommodate under Section 504—on any merits ground, so it should proceed for that reason alone. It is also well pleaded. The Amended Complaint alleges that Ms. Wilkes is a qualified individual with documented disabilities (Am. Compl. ¶¶ 25, 85); that NSU approved examination accommodations—1.5x time and a reduced-distraction setting—and circulated them to her faculty on April 26, 2022 (Am. Compl. ¶¶ 38, 41, 88); that NSU then failed to provide either accommodation on the June 28, 2022 OCT 6106 midterm despite the faculty's actual notice (Am. Compl. ¶¶ 44–45, 89); and that NSU used the academic

and personal consequences of its own failure as the basis for the proceedings that removed her (Am. Compl. ¶¶ 91–92). Those allegations state a denial of "meaningful access." *Alexander v. Choate*, 469 U.S. 287, 295–97, 301 (1985).

Each pleading-stage premise of Count I is settled in Plaintiff's favor. The Supreme Court has confirmed that ADA and Rehabilitation Act claims arising from educational services are governed by "the same standards that apply in other disability discrimination contexts," with no heightened "bad faith or gross misjudgment" showing required. *A.J.T. v. Osseo Area Schs.*, 605 U.S. 335, 145 S. Ct. 1647, 1654–56 (2025). Whether a modification is reasonable or instead works a fundamental alteration is a fact-bound question for development—not a pleading bar—and NSU bears the burden of proving fundamental alteration. *A.L. v. Walt Disney Parks & Resorts US, Inc.*, 900 F.3d 1270, 1291–96 (11th Cir. 2018); *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 688 (2001). Intent is required only for compensatory damages, through deliberate indifference, while injunctive and accommodation relief require no showing of intent at all. *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 344–49 (11th Cir. 2012); *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019). NSU's contention that the 83.6% grade is "inconsistent" with disability-based exclusion conflates merits with pleading: "solely by reason of" is a causation standard for a developed record, and NSU's recording of a passing total as a failure supports the plausible inference of pretext.

**III. Count III Adequately Alleges Standing for Prospective Relief.**

On a facial standing challenge, the Court accepts the complaint's well-pleaded allegations as true. *Lujan*, 504 U.S. at 561; *Houston*, 733 F.3d at 1328–29; *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021). NSU's own authority confirms the point: the standing holding in *Kennedy* issued on a factual attack at summary judgment, on a "well developed"

record the court was free to weigh, *id.* at 1230, 1233—not on the pleadings. NSU has submitted no evidence here, so its challenge is facial and Plaintiff's allegations are taken as true. The Amended Complaint pleads an ongoing injury: NSU maintains—and has refused to remove—a "Dismissed from Program" designation and a grade of "F" on Ms. Wilkes's transcript; it reissued an official transcript bearing both on December 31, 2025; and a Creighton University admissions counselor advised that the dismissal "would be a major obstacle to overcome." Am. Compl. ¶¶ 71, 76, 80, 110. That designation is NSU's own record, not Plaintiff's characterization, and a designation NSU presently maintains and refuses to correct is a continuing controversy, not a closed past act.

NSU's premise — that the "F" and "Dismissed from Program" notation are a spent 2022 act with only lingering consequences — misreads *Lyons*, which denied injunctive standing only because future injury there depended on a speculative chain of third-party conduct; *Lyons* expressly preserves standing where a past act is "accompanied by ... continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Here NSU itself presently maintains the designation and has refused to remove it, reissuing an official transcript bearing the "F" and "Dismissed" notation on December 31, 2025. Am. Compl. ¶¶ 71, 76, 110. Under binding Eleventh Circuit law, where the discriminatory "cause of the injury continues to exist" and has not been remedied, the threat of future injury is "real and immediate," not speculative, because recurrence "depends only on [the plaintiff's] own volition." *Houston v. Marod Supermarkets, Inc.,* 733 F.3d 1323, 1336 (11th Cir. 2013). A maintained, unremedied discriminatory record is therefore a continuing injury, and the correction Ms. Wilkes seeks—expungement of a disability-tainted academic record—is prospective relief, not retrospective damages. Because NSU mounts only a facial challenge and submits no evidence, these well-pleaded allegations are

taken as true, and dismissal on the pleadings is inappropriate. *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 377–81 (1982).

Ms. Wilkes alleges a present intent to resume occupational-therapy education, and the maintained designation is the barrier to doing so. Am. Compl. ¶ 110. She need not perform the "futile gesture" of reapplying while it stands. 42 U.S.C. § 12188(a)(1); *Am. All. for Equal Rights v. Fearless Fund Mgmt., LLC*, 103 F.4th 765, 774 (11th Cir. 2024). The injury is redressable by prospective relief—an injunction directing NSU to cease maintaining the designation and to afford non-discriminatory reconsideration and correction of it—which requires no showing of intent. Am. Compl. ¶ 110 & Prayer; *Silberman*, 927 F.3d at 1134. Courts afford precisely this relief in the education context, directing reexamination or correction of a disability-tainted academic record. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 496 (4th Cir. 2005); *Argenyi v. Creighton Univ.*, 703 F.3d 441 (8th Cir. 2013). Finally, NSU's standing challenge reaches only the prospective relief in Counts III and IV; it does not touch the Section 504 damages claims in Counts I and II. *Liese*, 701 F.3d at 344–49.

**IV. Counts II and IV Plead Causation and Are Not Duplicative.**

NSU contends that Counts II and IV—retaliation under Section 504, and retaliation and interference under the ADA—rest on temporal proximity alone. *See Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). They do not. The Amended Complaint pleads causation through NSU's own contemporaneous words: faculty invoked Ms. Wilkes's accommodations against her—"Per your accommodations" and "we need to adhere to the accommodation as it is written"—and the August 1, 2022 referral to the Committee on Student Progress expressly faulted her for "express[ing] not knowing she had accommodations" and for failing to "communicate as per accommodations." Am. Compl. ¶¶ 48–49, 53, 99.

Decisionmakers who tie the adverse action to the very accommodations a plaintiff requested supply a causal link far stronger than the timing-only inference NSU attacks; the Eleventh Circuit requires only that the protected activity and the adverse action be "not wholly unrelated." *Shotz v. City of Plantation*, 344 F.3d 1161, 1180 & n.30 (11th Cir. 2003); *see Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). *Shotz* also forecloses any suggestion that these claims are unavailable outside the employment setting: 42 U.S.C. § 12203 reaches the public-accommodations context, *id.* at 1170–71, and Plaintiff's prima facie burden is "relatively light," *id.* at 1184. Whether NSU's stated reasons are pretextual is resolved through burden-shifting after discovery, not on the pleadings.

The two counts are not duplicative. Section 504 and the ADA are distinct statutory vehicles, and the ADA separately prohibits interference, coercion, and intimidation—conduct broader than retaliation alone. 42 U.S.C. § 12203(a)–(b). The Amended Complaint pleads that NSU funneled Ms. Wilkes's disability disclosures and accommodation requests into a disciplinary track and used them as grounds for referral and dismissal, chilling her exercise of protected rights—a distinct interference theory. Pleading parallel statutory theories on a common factual core is expressly permitted. Fed. R. Civ. P. 8(d)(2)–(3).

**V. Count V States a Claim for Breach of Contract.**

Federal law imposes no heightened pleading obligation on a breach-of-contract plaintiff. Ms. Wilkes need only plausibly allege an enforceable contract, nonperformance, and resulting damages; she need not identify the specific clause breached, and any ambiguity is addressed through Rule 12(e), not dismissal. *Caterpillar Fin. Servs. Corp. v. Venequip Mach. Sales Corp.*, 147 F.4th 1341, 1346–47 (11th Cir. 2025); *Cavalieri v. Avior Airlines C.A.*, 25 F.4th 843, 852 (11th Cir. 2022) (rejecting "the erroneous notion" that a plaintiff must cite the term breached);

*Pals Grp., Inc. v. Quiskeya Trading Corp.*, No. 16-23905-CIV-GOODMAN, 2017 WL 3840359, at *3 (S.D. Fla. Sept. 1, 2017) (Florida's ultimate-facts rule has "no power here"); *Domante v. Dish Networks, L.L.C.*, 974 F.3d 1342, 1349–50 (11th Cir. 2020). Florida law recognizes that the student-university relationship is contractual and that its terms derive from the catalogs and handbooks in effect at enrollment. *Jallali v. Nova Se. Univ., Inc.*, 992 So. 2d 338, 342 (Fla. 4th DCA 2008); *Sirpal v. Univ. of Miami*, 509 F. App'x 924, 929 (11th Cir. 2013). And academic deference does not bar a claim directed at the administration of services rather than the exercise of academic judgment. *Rhodes v. Embry-Riddle Aeronautical Univ., Inc.*, 513 F. Supp. 3d 1350, 1357 (M.D. Fla. 2021).

Although no specific-term pleading is required, the Amended Complaint identifies and quotes the definite, measurable terms NSU breached—the published 78% passing threshold (Am. Compl. ¶¶ 17–18) and the rule authorizing dismissal "after two course failures" (Am. Compl. ¶ 19). NSU's reliance on *Herssein Law Grp. v. Reed Elsevier, Inc.*, 594 F. App'x 606, 608 (11th Cir. 2015), is misplaced: an unpublished decision cannot displace the published holdings of *Caterpillar* and *Cavalieri* that no term-identification is required, and Plaintiff satisfies even *Herssein* in any event. *Ferretti* does not help NSU either; it concerns whether a student-university contract was formed—confirming that catalogs and handbooks can form one—not any heightened pleading rule. *See Ferretti v. Nova Se. Univ., Inc.*, 604 F. Supp. 3d 1330 (S.D. Fla. 2022). The Amended Complaint pleads breach of those terms in two independent respects. First, NSU entered an "F" for OCT 6106 although its own gradebook recorded a course total of 83.6%, above the 78% threshold. Am. Compl. ¶¶ 58, 123. Second, NSU dismissed Ms. Wilkes under a rule authorizing dismissal only after two course failures when, on NSU's own records, she had at most one. Am. Compl. ¶¶ 70–71, 123.

NSU's responses—that the grading provision is merely "definitional," and that it applied a single-failure provision rather than the two-failure rule—are contract-construction and fact disputes the Court cannot resolve on a motion to dismiss. NSU's own decision letter deepens the dispute: it stated that Ms. Wilkes "suspends her studies in accordance with the policy," even as NSU recorded a "dismissal" on her transcript—a discrepancy that is itself triable. Am. Compl. ¶¶ 68–69, 71. And the Motion to Dismiss never engages the allegations that this was a dismissal from the outset, Am. Compl. ¶¶ 69, 74–81, or the allegation that, after these events and as the program was set to sunset, NSU amended the catalog to lower the very graduation threshold at issue—despite the requirement that such standards be fixed at the start of the program. Am. Compl. ¶ 81. A contracting party's departure from the written standard it drafted, followed by a post hoc amendment of that standard, is probative of both breach and pretext, and is not insulated by academic deference: *Jallali*'s deference rule expressly excepts university action taken "in violation of" a contract or statute, and this claim enforces NSU's published terms as written rather than asking the Court to set or second-guess a grade. Am. Compl. ¶ 124. *Tercier v. Univ. of Miami, Inc.*, 383 So. 3d 847, 854 (Fla. 3d DCA 2023), is the opposite case: the claim there failed because the plaintiff relied on a handbook post-dating his enrollment and merely recited policies, whereas Ms. Wilkes relies on the operative enrollment-era terms and pleads specific violations.

**VI. Count VI Is Pleaded as Part of Count V and Should Not Be Dismissed with Prejudice.**

NSU cites no case or statute for dismissing Count VI, and its premise is misplaced. The proposition that the implied covenant of good faith is not an independent cause of action is undisputed—but it is not what Count VI pleads. The covenant attaches to express terms, *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1316 (11th Cir. 1999), and the Amended Complaint pleads Count VI expressly "in the alternative to, and as a part of, Count V," tethered to the same 78%

and two-failure terms and "not asserted as a freestanding cause of action." Am. Compl. ¶¶ 126–127, 132. Because the count is anchored to express terms rather than asserted as a standalone claim, NSU's authority is inapposite.

Florida law implies the covenant as a "gap-filling default rule" wherever a contract "vest[s] a party with substantial discretion" without defined standards, requiring that discretion to be exercised "in a commercially reasonable manner" and forbidding the party from acting "capriciously to contravene the reasonable expectations" of the other. *Martorella v. Deutsche Bank Nat'l Tr. Co.*, 931 F. Supp. 2d 1218, 1225–26 (S.D. Fla. 2013); *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1097–98 (Fla. 1st DCA 1999). NSU's progression framework conferred exactly such discretion—whether a student who failed a course "may be allowed to continue in the program," as "determined by the recommendation of the CSP and the decision of the department chair." Am. Compl. ¶ 129. Allegations that NSU exercised that discretion in bad faith—treating a course total above its own published threshold as a "failure" to trigger the dismissal machinery—"fully state a claim," and whether NSU acted in good faith is "a question of fact" for trial, not for the pleadings. *Martorella*, 931 F. Supp. 2d at 1226; *Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1278–79 (S.D. Fla. 2009); *Burger King Corp. v. Broad St. Licensing Grp., LLC*, 469 F. App'x 819, 821–22 (11th Cir. 2012).

**VII. Count VII Pleads Detrimental Reliance.**

Promissory estoppel requires a definite promise, reasonable reliance, and a detrimental change in position. *W.R. Grace & Co. v. Geodata Servs., Inc.*, 547 So. 2d 919, 924–25 (Fla. 1989). In reliance on Dr. Knoeferl's August 7, 2022 assurance that her matter "does not rise to" the level of dismissal, Ms. Wilkes forbore from taking contemporaneous protective steps—seeking a leave of absence, pursuing immediate external review, or otherwise guarding

against an outcome she had been assured was not in prospect. Am. Compl. ¶¶ 135, 137–138. Florida law has always recognized reliance "in the form of action or forbearance," *id.* at 924, and forgoing a protective step in reliance on another's assurance is cognizable detrimental reliance, not mere inaction. *See James v. Hertz Corp.*, 757 So. 2d 1214, 1215 (Fla. 4th DCA 2000).

Whether the options Ms. Wilkes forwent were available, and whether she would have pursued them but for NSU's assurance, are fact questions that cannot be resolved against her on the pleadings. *Cummins v. Allstate Indem. Co.*, 732 So. 2d 380, 382–83 (Fla. 5th DCA 1999). NSU's contrary authority does not bear on the pleadings: *Eclipse Medical* was decided on summary judgment and turned on the absence of record evidence of reliance, not the sufficiency of a pleading. *Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1351 (S.D. Fla. 1999), aff'd, 235 F.3d 1344 (11th Cir. 2000). The count is, in any event, pleaded in the alternative to her contract claims. Am. Compl. ¶ 134.

**VIII. Count VIII Satisfies Rule 9(b).**

A negligent-misrepresentation claim must plead the who, what, when, where, and how of the misrepresentation. *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1503 (11th Cir. 1993); *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 951 (11th Cir. 2014); *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006). The Amended Complaint supplies each particular for the operative representation: the speaker (Dr. Heather Knoeferl); the statement (that Ms. Wilkes's "case does not rise to" the level of dismissal); the time and manner (on or about August 7, 2022, by email, during the CSP referral process); and its falsity when made—as Dr. Lowrey's August 15, 2022 email reflects, NSU had already determined Ms. Wilkes would "start over in the OTD." Am. Compl. ¶¶ 143–145. That is the particularity Rule 9(b) demands, which "must not be read to abrogate Rule 8(a)"; "adequate notice," not perfection, suffices even under that standard.

*Serra-Cruz v. Carnival Corp.*, 400 F. Supp. 3d 1364, 1369–70 (S.D. Fla. 2019); *Mobil Oil Corp. v. Dade Cnty. Esoil Mgmt. Co.*, 982 F. Supp. 873, 878 (S.D. Fla. 1997); *Okposio*, 2023 WL 7484223, at *3.

**IX. Count IX Is Pleaded in the Alternative and Cannot Be Dismissed with Prejudice.**

Rule 8(d) authorizes a plaintiff to plead unjust enrichment in the alternative to a contract claim, and even alongside one, while the existence and enforceability of an express contract remain unresolved. Fed. R. Civ. P. 8(d)(2)–(3). The express-contract bar NSU invokes operates only once an enforceable express contract has been established—at judgment, not on the pleadings. *Williams v. Bear Stearns & Co.*, 725 So. 2d 397, 400 (Fla. 5th DCA 1998); *ThunderWave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1566 (S.D. Fla. 1997); *Mobil Oil*, 982 F. Supp. at 880. NSU cannot have it both ways: it disputes the existence of a contract in seeking dismissal of Count V, then invokes a contract to bar Count IX. The count is pleaded "strictly in the alternative" and only "to the extent the Court determines that no enforceable contract governs." Am. Compl. ¶ 150. Even if Florida law supplies an implied-in-fact contract, its scope and enforceability remain unresolved, and Rule 8(d) permits Ms. Wilkes to plead restitution of the acceptance fee and tuition in the alternative until they are. *Jallali*, 992 So. 2d at 342; *Sirpal*, 509 F. App'x at 929.

This District has twice rejected the very argument NSU makes here—once against NSU itself. In both *Gibson v. Lynn Univ., Inc.*, 504 F. Supp. 3d 1335 (S.D. Fla. 2020), and *Ferretti v. Nova Se. Univ., Inc.*, 604 F. Supp. 3d 1330 (S.D. Fla. 2022), the court held that the *Sirpal*/*Jallali* rule that the student-university relationship is "solely contractual in character" describes an implied-in-fact contract, not an integrated express one, and does not categorically bar an alternatively pleaded unjust-enrichment claim. "It is only upon a showing that an express

contract exists"—not its mere allegation—"that the unjust enrichment . . . count fails." *Gibson*, 504 F. Supp. 3d at 1344 (quoting *Martorella*, 931 F. Supp. 2d at 1228). *Ferretti* applied that very rule to NSU and allowed an alternative unjust-enrichment claim to proceed where the governing terms were unresolved. At a minimum, dismissal of Count IX with prejudice would be improper.

**X. Counts X and XI Are Not Barred and Should Not Be Dismissed with Prejudice.**

A private university owes its adult students a duty to use ordinary care; it is not exempt from negligence principles. *Nova Se. Univ., Inc. v. Gross*, 758 So. 2d 86, 89–90 (Fla. 2000). Once NSU undertook to administer the accommodation process—receiving disability disclosures, approving accommodations, implementing them through designated personnel, and handling the related proceedings (Am. Compl. ¶¶ 157–159, 164–166)—it was obligated to do so with reasonable care. *Union Park Mem'l Chapel v. Hutt*, 670 So. 2d 64, 66–67 (Fla. 1996) (adopting Restatement (Second) of Torts § 324A); *Banfield v. Addington*, 140 So. 893, 896 (Fla. 1932). That is administrative conduct NSU chose to undertake, not academic judgment or the quality of instruction.

None of NSU's bars applies. A tort action lies for acts independent of those that breach a contract, *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996), and the harm alleged—mishandling of Ms. Wilkes's confidential disability information and failure to implement approved accommodations—is distinct from mere defective contractual performance. The economic-loss rule is confined to products-liability cases, *Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399, 407 (Fla. 2013)—a limitation that postdates and narrows the authority on which NSU relies, *see Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490, 494 (Fla. 3d DCA 1994)—and where the existence of a contract is unresolved, the Court cannot yet determine whether any such bar applies, *Floral Logistics of Miami, Inc. v. N.Y. Garden Flower*

*Wholesale, Inc.*, No. 23-20073-CIV, 2023 WL 4295320, at *5 (S.D. Fla. June 30, 2023). The educational-malpractice bar reaches only claims attacking academic judgment or the quality of instruction, not ministerial failures such as declining to implement already-approved accommodations. *Tubell v. Dade Cnty. Pub. Schs.*, 419 So. 2d 388, 389 (Fla. 3d DCA 1982); *Dep't of Health & Rehab. Servs. v. B.J.M.*, 656 So. 2d 906, 914 (Fla. 1995); *Newman v. Socata SAS*, 924 F. Supp. 2d 1322, 1329–30 (M.D. Fla. 2013). Negligent supervision and negligent training are distinct theories with distinct elements, and NSU's demand that Plaintiff identify a single "propensity" employee misstates the standard; the Amended Complaint pleads NSU's notice that approved accommodations went unimplemented and that confidential disability information was used against Ms. Wilkes. *G4S Secure Sols. USA, Inc. v. Golzar*, 208 So. 3d 204, 208 & n.4 (Fla. 3d DCA 2016); *Int'l Sec. Mgmt. Grp., Inc. v. Rolland*, 271 So. 3d 33, 44 (Fla. 3d DCA 2018); Am. Compl. ¶ 160. Any element gap, in any event, is curable by repleader, not dismissal with prejudice. *Vibe Micro*, 878 F.3d at 1295–96.

**XI. Count XII States a FDUTPA Claim.**

A FDUTPA claim requires a deceptive or unfair act, causation, and actual damages, and a single act can violate FDUTPA even if it also breaches a contract. *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1326 (S.D. Fla. 2017); *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003); *cf. Rebman v. Follett Higher Educ. Grp., Inc.*, 575 F. Supp. 2d 1272, 1279 (M.D. Fla. 2008). The practice alleged here—NSU's failure to disclose, before Ms. Wilkes accepted admission and paid, that the M.O.T. program was being discontinued—is distinct from any breach, and the omission is pleaded with the particularity Rule 9(b) requires: the actor (NSU), the omission (the program sunset), the timing (the public webpage carried no notice as of May 6, 2021 and was edited to

add one by August 1, 2021), and the medium. Am. Compl. ¶¶ 22–23, 173–74. On a failure-to-disclose theory, whether a later or partial website disclosure dispels the deception "is a factual issue . . . not appropriate for consideration on a motion to dismiss," and causation and damages are adequately pleaded by allegations that, had Plaintiff known, she "would not have purchased or would have paid less"—no actual reliance is required. *Harris v. Nordyne, LLC*, No. 14-cv-21884, 2014 WL 12516076, at *4–7 (S.D. Fla. Nov. 14, 2014). Damages are the nonrefundable acceptance fee and tuition Ms. Wilkes paid to enter a program whose discontinuation NSU did not disclose—a loss flowing from the omission itself; whether some damages also flow from the later dismissal is a question of apportionment, not a pleading defect. Am. Compl. ¶¶ 24, 172, 176.

NSU's causation argument is also internally inconsistent: it contends that Plaintiff was "not denied the benefit of her tuition because the program was ending," while elsewhere asserting that "the ordinary retake pathway within the M.O.T. program was unavailable because that program had sunset." Those positions cannot both hold, and the tension between them is a merits dispute the Court cannot resolve on a motion to dismiss.

NSU's nondisclosure also offends an established Florida public policy, which confirms its "unfair" and "deceptive" character under FDUTPA. Florida law requires nonpublic postsecondary institutions — expressly including those exempt from Commission licensure as accredited nonprofits under section 1005.06(1)(c) — to disclose program information in writing before enrollment and to "[e]nsure that all advertisements are accurate and not misleading." Fla. Stat. § 1005.04(1)(a), (e); see §1005.06(1)(c). The Legislature has declared its intent "to prohibit misleading literature, advertising, solicitation, or representations by independent postsecondary educational institutions," §1005.01(3), and has characterized violations of section 1005.04 as

unfair or deceptive acts or practices, §1005.22(1)(p). Ms. Wilkes does not plead Chapter 1005 as an independent cause of action; she invokes it, as the Amended Complaint states, as a standard informing the deception-and-unfairness analysis under FDUTPA. Am. Compl. ¶ 173. That the practice also offends a specific statutory disclosure duty owed to prospective students confirms Count XII is not a repackaged contract claim.

**XII. Count XIII Seeks Distinct Relief and Is Not Redundant.**

Count XIII (declaratory judgment) does not merely restate Count V. It seeks a declaration that NSU's entry of the "F" and the resulting "Dismissed from Program" designation were contrary to NSU's published policies, together with an order directing NSU to correct that designation—forward-looking relief addressing the live, continuing transcript designation, not the backward-looking contract damages Count V seeks. Am. Compl. ¶¶ 178–81 & Prayer. The Declaratory Judgment Act commits to the Court's discretion whether to entertain such a claim, 28 U.S.C. §§ 2201–2202; Fed. R. Civ. P. 57, and dismissal as "redundant" at the pleading stage is premature where the declaration would settle the parties' continuing relations.

**XIII. The Pending Stay Motion Provides No Basis to Dismiss.**

Finally, NSU's companion motion to stay all discovery pending this Motion to Dismiss (D.E. 10) supplies no additional ground for dismissal. By NSU's own description, this Motion to Dismiss is at most one that is "potentially dispositive or, at minimum, may materially narrow the case." D.E. 10 ¶ 8. A motion that may "narrow" the case is not one that disposes of it, and it does not touch Count I, the core Section 504 claim that will proceed regardless of how the Motion to Dismiss is resolved. A non-dispositive motion that leaves the central claim untouched is no reason to dismiss the Amended Complaint; Plaintiff addresses the stay in full in her separate response to D.E. 10.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion; or, in the alternative, that any dismissal be without prejudice and with leave to amend.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Plaintiff respectfully requests oral argument on Defendant's Motion to Dismiss. A hearing would materially assist the Court for several case-specific reasons. First, the Motion to Dismiss challenges twelve of the thirteen counts on distinct legal theories—shotgun pleading, Article III standing, breach of contract and the implied covenant of good faith, promissory estoppel, negligent misrepresentation under Rule 9(b), unjust enrichment, negligence and negligent training and supervision, FDUTPA, and declaratory judgment. Argument would allow the parties to address each theory efficiently and to answer the Court's questions on the governing elements and controlling authority for each, rather than leaving the Court to reconcile competing count-by-count briefing on the papers alone.

Second, the dispositive questions turn on the interplay between NSU's own records and the applicable pleading standard—its Canvas gradebook recording a course total of 83.6% against a published 78% passing threshold, the "F" entered on Ms. Wilkes's transcript, the "after two course failures" dismissal policy, and a decision letter describing a "suspension" while the transcript reflects a "dismissal." Oral argument would help the Court isolate which of NSU's contentions present pure questions of law suited to resolution on a Rule 12(b)(6) motion and which instead improperly seek merits and contract-construction rulings, including how recent and intervening authority such as *A.J.T. v. Osseo Area Schools* bears on the Section 504 claim.

Third, several issues implicate recent decisions and unsettled applications of Florida law in the student-university context, on which focused questioning may aid the Court. Plaintiff

estimates that thirty minutes per side will be sufficient for argument. The factual nuances and some of the facts can also be better understood through oral arguments.

Should the Court prefer to resolve the Motion to Dismiss on the papers, Plaintiff is content to have it decided on the briefing.

Respectfully submitted,

/s/ Zachary Gaynor
Zachary Gaynor, Esq.
Florida Bar No. 125534
FLeducationlawyer.com
8903 Glades Rd, Ste A8 #2322
Boca Raton, FL 33434
Telephone: (561) 308-9119
Email: Zachary@FLeducationlawyer.com
Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 26, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will serve a copy on all counsel of record.

/s/ Zachary Gaynor
Zachary Gaynor, Esq.