UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 0:26-cv-61429-EA/Augustin-Birch

SAVANNAH WILKES,

Plaintiff,

v.

NOVA SOUTHEASTERN UNIVERSITY, INC.,

Defendant.

_______________________________________/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STAY DISCOVERY [D.E. 10]**

Plaintiff, Savannah Wilkes, opposes Defendant Nova Southeastern University, Inc.'s Motion to Stay Discovery [D.E. 10] (the "Motion to Stay Discovery" or "MTSD") and respectfully requests that it be denied. The MTSD is both procedurally improper and substantively meritless: it is unclear whether it is even addressed to the correct judicial officer; it does not conform to the rules that now govern discovery motions in this case; and, on the merits, NSU has not carried its burden to justify the disfavored remedy of a blanket discovery stay.

## INTRODUCTION

A stay of all discovery is the exception, not the rule, and the movant bears the burden. NSU asks the Court to halt discovery in its entirety on the premise that its pending Motion to Dismiss [D.E. 9] presents only "purely legal" issues that may dispose of the case. That premise fails on NSU's own papers. The Motion to Dismiss asks the Court to require repleader of most counts, "does not oppose leave to replead," seeks dismissal with prejudice of only three of thirteen counts, and asks the Court to set a page limit for a further amended pleading. Mot. to

Dismiss [D.E. 9] at 15–16. A motion that contemplates an amended complaint is not "truly case dispositive," and a pending Rule 12(b)(6) motion does not stay discovery automatically.

The MTSD has also been overtaken by events. On June 25, 2026—with both the Motion to Dismiss and the MTSD already pending—the Court entered its Order Setting Trial and Pre-Trial Schedule [D.E. 11], placing this case on a full pretrial and trial track that requires all discovery to close by February 5, 2027, with trial in May 2027, and fixing August 31, 2026 as the deadline to amend the pleadings. D.E. 11 at 1. The Court thus entered a firm schedule knowing both motions were pending, and supplied on a date certain the very pleadings-stage certainty the MTSD claims to seek. When Plaintiff asked NSU to withdraw the now-overtaken MTSD, NSU refused, stating it "does not intend to withdraw the motion." A stay would not conserve resources; it would compress a fixed schedule to Plaintiff's prejudice.

Finally, the claims are fact-bound. Whether NSU implemented Ms. Wilkes's approved accommodations, how it administered the proceedings that led to her dismissal, and whether the "F" it entered over its own gradebook's 83.6% was pretextual are questions that will require discovery into NSU's own records—Canvas data and audit logs, the transcript and student-information system, the disability-services file, internal emails, and committee records—regardless of how the Court rules on the MTD. The MTSD should be denied.

## ARGUMENT

### I. The MTSD is procedurally improper: it is unclear who is to decide it, and it does not conform to the rules now governing discovery motions in this case.

It is unclear whether the MTSD is addressed to the District Judge or the Magistrate Judge. NSU filed the MTSD on June 24, 2026 and directed its proposed order to "Hon. Ed Artau, United States District Judge." D.E. 10-2. One day later, the Court referred this cause to United

States Magistrate Judge Augustin-Birch "for appropriate disposition of . . . pretrial motions related to discovery" and directed the parties to adhere to "the magistrate judge's standing discovery order for handling discovery disputes." D.E. 11 at 3–4; see S.D. Fla. L.R. 7.1(b)(3) ("Discovery motions may be referred to and heard by a United States Magistrate Judge."). A motion to stay discovery is a discovery motion. It is therefore unclear, on the present record, whether the MTSD is to be decided by the District Judge to whom it is addressed or by the Magistrate Judge to whom discovery matters have since been referred. Plaintiff raises the point candidly rather than guess; the misdirection of NSU's proposed order to the District Judge, after entry of the discovery referral, is itself reason to deny the MTSD without prejudice to refiling before the proper judicial officer.

The MTSD does not comply with the rules governing discovery motions. The Local Rules provide that, "[u]nless an assigned judge's discovery procedures provide otherwise, a discovery motion and the memorandum in opposition are each limited to ten (10) pages," and that "the moving party must attach to the motion the disputed discovery item and any objection and response thereto." S.D. Fla. L.R. 26.1(g)(3). NSU attached Plaintiff's First Requests for Production (MTSD Ex. A) but attached no objection and no response to them—for the simple reason that none exists. NSU has not served any response or objection to the requests; the requests were deemed served at the parties' June 23, 2026 Rule 26(f) conference, and NSU's deadline to respond has not run. There is thus no "disputed discovery item and . . . objection and response" capable of being placed before the Court, because there is as yet no discovery dispute to resolve. A defendant cannot manufacture a ripe discovery dispute—or obtain a ruling cabining discovery—before it has even responded to the requests it complains about. See S.D. Fla. L.R. 26.1(g)(2)(A) (a discovery dispute over a "written response or objection" is submitted within

twenty-eight days "of service of the written response or objection that is the subject of the dispute").

The MTSD also bypasses the Magistrate Judge's standing discovery procedures, which now govern. The Local Rules direct that the discovery-motion rules apply "unless they conflict with the assigned judge's procedures, in which case such procedures shall control." S.D. Fla. L.R. 26.1(g)(1). D.E. 11 directs the parties to Judge Augustin-Birch's Standing Discovery Order, which requires a party with a discovery dispute to confer in person or by telephone, contact chambers to schedule a hearing, and then file "a concise discovery motion of no more than three pages." Standing Discovery Order § I. The MTSD is a nine-page plenary motion noticed to the District Judge; it neither invokes nor follows that procedure. Plaintiff acknowledges the timing wrinkle—the referral issued the day after the MTSD was filed—but the consequence is the same: to the extent the MTSD is the discovery motion it plainly is, it is in the wrong court, in the wrong form, and unsupported by the predicate the rules require. The docket reflects the same irregularity, entering D.E. 10 as a combined "MOTION to Stay , . . . MOTION for Discovery." Each of these defects independently supports denial.

Plaintiff responds here in the form NSU chose—a memorandum under Local Rule 7.1(c) to the motion as NSU filed and noticed it. To the extent the Court instead treats this matter as a discovery motion governed by Local Rule 26.1(g)(3) or by the Magistrate Judge's standing procedures, Plaintiff is prepared to conform to whatever procedure the Court directs.

## II. The governing standard: NSU bears the burden, a pending motion to dismiss does not stay discovery, and the Court takes only a "preliminary peek."

A motion to stay discovery is committed to the Court's discretion under Rule 26(c), but the movant "bears the burden of showing good cause and reasonableness." *Feldman v. Flood*,

176 F.R.D. 651, 652 (M.D. Fla. 1997). Such motions "are not favored," and "a request to stay all discovery pending resolution of a motion is rarely appropriate where resolution of the motion will not dispose of the entire case." Id.. There is no automatic stay; Congress created one only in the PSLRA, and outside that regime an ordinary Rule 12(b)(6) motion does not stay discovery. *Koock v. Sugar & Felsenthal, LLP*, No. 8:09-cv-609-T-17EAJ, 2009 WL 2579307, at *1 (M.D. Fla. Aug. 19, 2009).

In deciding the motion, the Court "must balance the harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery," and "must take a 'preliminary peek' at the merits of the dispositive motion to see if it appears to be clearly meritorious and truly case dispositive." Id. at *2 (citing*McCabe v. Foley*, 233 F.R.D. 683, 685 (M.D. Fla. 2006)). A motion presenting substantial but contestable issues does not meet that bar. *Feldman*, 176 F.R.D. at 652–53. NSU's lead authority, *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353 (11th Cir. 1997), is not to the contrary: it "do[es] not establish the general rule that discovery should not proceed while a motion to dismiss is pending," but stands for the narrower point that courts should not delay *ruling* on a likely meritorious motion to dismiss while undue discovery costs mount. *Koock*, 2009 WL 2579307, at *2; see*Chudasama*, 123 F.3d at 1368.

**III. The Motion to Dismiss is not "clearly meritorious and truly case-dispositive," and NSU cannot litigate the merits—or the scope of discovery—through a stay.**

The MTSD fails the preliminary-peek test at the threshold because NSU does not contend its Motion to Dismiss will end the case. NSU describes the motion as "potentially dispositive or, at minimum, [one that] may materially narrow the case." MTSD ¶ 8. A motion that, at minimum, only narrows the case is the opposite of "truly case dispositive." *Koock*, 2009 WL 2579307, at

*2. NSU "does not oppose leave to replead," seeks dismissal with prejudice of only three of thirteen counts, and asks leave to file yet another amended complaint subject to a court-set page limit. Mot. to Dismiss at 15–16. Where even a successful motion would leave Plaintiff free to amend, courts decline to stay, because dismissal "would not necessarily dispose of the case." *Feldman*, 176 F.R.D. at 653.

Nor is the Motion to Dismiss "clearly meritorious." Its lead shotgun-pleading theory is foreclosed by *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015): a defendant that parses a complaint count-by-count, as NSU does across seventeen pages, has the notice the Rules require. Whether the Amended Complaint is a shotgun pleading, whether its allegations are adequately particular, and whether Plaintiff has standing are the very questions presented by the Motion to Dismiss and fully briefed in Plaintiff's Response in Opposition to that motion, which Plaintiff incorporates by reference. They should be decided on the Motion to Dismiss, on the pleading, under federal pleading law—not previewed on a stay, and not under Florida's inapplicable "ultimate facts" standard.

NSU's stay papers also mischaracterize Plaintiff's discovery as sprawling and the case as unfocused. It is neither. Plaintiff's requests identify documents by source and record type—the Canvas gradebook and quiz-configuration records, the Respondus session logs, the WebSTAR/student-information-system records, the official transcript, the Office of Student Disability Services file, and the catalogs and handbooks—and Plaintiff supplied a concrete, custodian- and term-based ESI search protocol to focus the communications searches. More fundamentally, NSU's objections to the breadth or proportionality of particular requests are precisely the objections that belong in NSU's Rule 34 responses and, if a dispute remains, in a properly presented discovery motion under the Magistrate Judge's procedures. NSU should not

be permitted to litigate the scope of discovery through a stay motion before it has served a single response or objection, and then litigate the same objections again later. Scope is resolved request-by-request on a developed record, not by a blanket stay.

Indeed, the time to raise NSU's request-specific objections is in its written responses, not in a stay motion. Rule 34 requires a party served with requests for production to state, in a written response served within the response period, either that inspection will be permitted or an objection to the request—and to state the grounds for each objection with specificity. Fed. R. Civ. P. 34(b)(2)(A)–(C); see S.D. Fla. L.R. 26.1(e)(2)(A) (where an objection is made to a production request, "the objection shall state with specificity all grounds"). Grounds not timely and specifically asserted in that response are generally waived. The MTSD neither makes those objections in the manner Rule 34 requires nor preserves them; a motion to stay is not a substitute for, and does not reserve, the objections NSU must assert when its responses come due. NSU's effort to brand the requests overbroad in a stay motion—while withholding the actual, request-by-request objections the Rules require—is both premature and procedurally improper, and the Court should not entertain a preview of objections that have not been made.

**IV. The Amended Complaint frames fact-bound access and administration claims that require discovery regardless of how the Motion to Dismiss is resolved.**

NSU's premise—that the Motion to Dismiss "does not raise fact-bound issues requiring discovery," MTSD at 4—misdescribes this case. The Amended Complaint turns on what NSU did, when, and through which records. NSU approved testing accommodations (1.5x time and a reduced-distraction setting) and circulated them by email on April 26, 2022 to ten named faculty and program personnel; the faculty responsible for OCT 6106 had actual notice before the examination; and NSU then failed to provide either approved accommodation on the June 28,

2022 OCT 6106 midterm, on which Ms. Wilkes scored the lowest grade in the class against a class mean of 174.51. Am. Compl. [D.E. 7] ¶¶ 41, 44, 45. NSU's own Canvas gradebook recorded a course total of 836 of 1,000 points—83.6%—above the published 78% threshold, yet NSU entered an "F" and a "Dismissed from Program" notation that a December 31, 2025 transcript still bears. Id. ¶¶ 58, 71. Internal emails reflect the disconnect, including an August 15, 2022 statement that Ms. Wilkes "will have to start over in the OTD" before any dismissal determination. Id. ¶¶ 60, 62.

Resolving these allegations requires system records that exist only in NSU's custody: the Canvas gradebook, quiz-configuration and "Moderate This Quiz" per-student override records, and gradebook audit logs; the Respondus session logs; the student-information-system records; the official transcript; and the disability-services file. NSU itself catalogs these very materials, acknowledging that Plaintiff's requests seek "system audit logs, grade and transcript records, disability-services materials, internal communications, institutional policies, [and] academic and program records." MTSD at 6. Whether a requested modification was reasonable or would have worked a fundamental alteration is, as pleaded, "a fact-bound question on which NSU bears the burden." Am. Compl. ¶ 108. None of this is the "purely legal" dispute that, under *Chudasama*, can be "resolved before discovery begins." 123 F.3d at 1368.

## V. Preservation cuts against a stay: delay endangers dynamic, system-generated proof.

NSU offers its continuing preservation obligations as the reason a stay is "harmless," representing that "NSU's preservation obligations remain in place." MTSD at 7. That cuts the other way. NSU made the same assurance months ago, confirming that it "is aware of its preservation obligations and intends to comply with them." (Counsel correspondence, May 15, 2026, available for the Court's review upon request.) A litigation hold is necessary, but it is not a

substitute for timely discovery of records that are dynamic by nature. The proof at the center of this case is system-generated and mutable: Canvas configuration, the "Moderate This Quiz" override records, gradebook entries, and the audit and session logs that show how and when an 83.6% total became an "F"; student-information-system records; and the account and access logs of the kind implicated when Ms. Wilkes's NSU email account was locked after she asked about the appeal process. NSU's own list of disputed materials—"metadata, system audit logs, . . . and documents concerning litigation hold, document retention, and ESI-preservation efforts," MTSD at 6—describes precisely the categories most vulnerable to degradation during a stay of unknown length. Deferring discovery of that material does not preserve it on equal terms; it lengthens the window in which it can be lost. *Feldman*, 176 F.R.D. at 652.

**VI. Posture and timing decisively favor proceeding, and NSU's own conduct forecloses the burden and phasing rationales it now advances.**

First, the Rules contemplate that discovery planning proceeds despite a pending Rule 12 motion. Rule 26(f)(1) requires the parties to confer "as soon as practicable," and the 1993 Advisory Committee Note states that the planning obligation "is imposed on all parties that have appeared in the case, including defendants who, because of a pending Rule 12 motion, may not have yet filed an answer in the case." Fed. R. Civ. P. 26(f) advisory committee's note to 1993 amendment. The parties in fact held their Rule 26(f) conference on June 23, 2026, and Plaintiff's First Requests for Production were deemed served at that conference under Rule 26(d)(2)(B).

Second, the Court's scheduling order forecloses NSU's "pleadings are unsettled" rationale. D.E. 11 was entered after both motions were pending and placed the case on a full pretrial track, with all discovery complete by February 5, 2027 and an August 31, 2026 deadline to amend. D.E. 11 at 1. That deadline supplies the pleadings-stage certainty NSU says it wants,

on a date certain, while presuming that discovery and any remaining pleadings practice proceed in parallel. Time spent under a stay is not recoverable against the Court's deadlines.

Third, NSU's own conduct forecloses the burden and phasing arguments it now presses. Plaintiff did not insist on all-at-once discovery; to the contrary, Plaintiff proposed proceeding in phases and asked NSU whether it wished to propose a phase-one production. NSU rejected that overture outright, responding that "[p]hased production parameters are premature" because it had "not yet served its responses and objections," while assuring Plaintiff that "at the appropriate time, NSU will respond to the requests as served, assert applicable objections, and produce responsive, non-objectionable documents." (Counsel correspondence, June 24, 2026, available for the Court's review upon request.) Having told Plaintiff it would respond to discovery in the ordinary course, NSU moved that same day to stay it. A party that refused phasing, refused for weeks to set the Rule 26(f) conference, and declined even to furnish the operative student handbooks cannot now invoke the burden of discovery—or offer phasing as the answer—as grounds to halt it. The equities favor proceeding on the schedule the Court has set.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Stay Discovery [D.E. 10]. Plaintiff further requests that the Court (i) confirm that NSU's request-specific objections to Plaintiff's discovery are preserved only if timely and specifically asserted in its written responses under Federal Rule of Civil Procedure 34, and are neither reserved nor preserved by the MTSD; and (ii) direct that any renewed request to stay or limit discovery be raised, if at all, through the Magistrate Judge's standing discovery procedures and only upon a showing of materially changed circumstances. See S.D. Fla. L.R. 7.1(e) (governing successive applications for the same relief).

Dated: June 26, 2026.

Respectfully submitted,

/s/ Zachary Gaynor
Zachary Gaynor, Esq.
Florida Bar No. 125534
Website: FLeducationlawyer.com
8903 Glades Rd, Ste A8 #2322
Boca Raton, FL 33434
Telephone: (561) 308-9119
Email: Zacharysgaynor@gmail.com
Email: Zachary@FLeducationlawyer.com
Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 26, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will serve a copy on all counsel of record.

/s/ Zachary Gaynor
Zachary Gaynor, Esq.